# Richmond.

## W. T. Etheridge v. Norfolk Southern Railroad Co., et al.

### October 1, 1925.

1. Crossings—*Signals—Automatic Signals—Contributory Negligence—Case at Bar.*—A plaintiff, a driver of an automobile, in an action for injuries sustained in a collision at a railroad crossing, cannot recover because the automatic signals were out of order, if he himself was guilty of contributory negligence.

2. Crossings—*Contributory Negligence—Automatic Signals.*—In the instant case, plaintiff was injured when he ran his automobile into the engine of defendant at a railroad crossing. Plaintiff, a man in full possession of his faculties, in broad daylight, in a level country, traveling at a moderate rate of speed, where the view was unobstructed, ran into the side of an oncoming train which he did not see until it was too late to save himself, plaintiff testified that he neither looked or listened for the train but concentrated his attention on the automatic signal, which was out of order.

   *Held:* That plaintiff was guilty of contributory negligence.

3. Crossings—*Contributory Negligence—Open Gates—Silent Gong—Case at Bar.*—The erection of gates, gongs, or other devices at highway or street crossings to warn travelers of approaching trains does not excuse a traveler at such crossings from exercising ordinary care and caution. But generally the same degree of care and caution is not required of the traveler as if there was no such invitation as an open gate or a silent gong gives to the traveler to cross.

4. Crossings—*Silent Gong—Open Gates—Questions of Law and Fact.*—In cases where there is failure to close the gates or an automatic gong fails to sound and a collision follows, the question of negligence and contributory negligence is usually for the jury.

5. Questions of Law and Fact—*Negligence—Contributory Negligence.*— Questions of care and negligence after the facts are proved must be decided by the court. A judge is not bound to submit to the jury the question of negligence, although there may be a conflict of evidence in relation to some of the facts relied on as proving it, if rejecting the conflicting evidence, the negligence charged is conclusively proved by the defendant's own witness. Thus the question whether contributory negligence has been proven in a given case is usually

one for the jury. Nevertheless such question, in a particular case, may become one of law and thus come within the province of the court.

6. NEGLIGENCE—*Contributory Negligence—Questions of Law and Fact.*— Where the facts are such that reasonable men of fair intelligence may draw different conclusions, the question of contributory negligence must be submitted to the jury, for the finding is then of fact. But if it is clear that only one reasonable inference can be drawn from the facts, and the course which prudence dictates be definitely discerned, the finding thereon is of law, not of fact, and it devolves upon the court to settle the matter.

7. CROSSINGS—*Statutory Signals—Whether Properly Given—Conclusiveness of Verdict of Jury.*—In an action for injuries sustained in an accident at a crossing, the question of whether the railroad gave the statutory signal of approach is settled by the verdict of the jury in favor of the plaintiff if the jury was properly instructed as to the law applicable.

8. CROSSINGS—*Instructions—Statutory Signals—Proximate Cause.*—In an action for injuries arising out of an accident at a railroad crossing, an instruction asked for which told the jury to return a verdict for the plaintiff if they believed that the railroad company had, "in any particular," failed to give the statutory signals of approach called for by section 3959 of the Code of 1919, was refused by the trial court, which modified it by the addition of the words "provided they further believe from the evidence that the failure to blow the whistle or ring the bell was the proximate cause of the accident."

*Held:* That the modification was proper.

9. NEGLIGENCE—*Proximate Cause—Negligence Must Contribute to the Injury.*—No judgment can be based upon a defendant's negligence unless that negligence in some degree contributed to the injury. There must be some casual connection between them.

10. NEGLIGENCE—*Proximate Cause—Definition of Proximate Cause—More than One Proximate Cause.*—Proximate cause is an unsatisfactory phrase, but by its use in unnumbered cases it has grown to be a part of the livery of the law of negligence and it is now too late to discard it. A cause without which something would not have happened is a proximate cause, but it is not necessary that such cause be the major cause. It is also true that there may be more than one proximate cause, though they contribute to the result in an unequal degree.

11. CROSSINGS—*Statutory Signals—Section 3959 of the Code of 1919—Comparative Negligence.*—Section 3959 of the Code of 1919, in regard to the effect of failure to give statutory signals does not change the law of negligence and it is still true, that the burden of proof is upon the plaintiff to prove that the operators of the train failed to give the statutory signals and that such failure caused the injury. Sec-

tion 3959 of the Code of 1919, did nothing more than to provide that in such cases the doctrine of comparative negligence should be substituted for that of contributory negligence. It is still necessary for the plaintiff to prove that the defendant's negligence caused his injury; that but for it the injury would not have occurred, but having shown this, he is not precluded upon recovery by the fact that he himself was negligent.

12. CROSSINGS—*Proximate Cause—Comparative Negligence—Section 3959 of the Code of 1919.*—A cause without which an accident would not have happened is a proximate cause. When that has been established and when it has appeared that the defendant was responsible therefor the plaintiff is entitled to judgment and this cannot be defeated by showing that he, also, was negligent, however gross that negligence may have been. In such a case the adjustment of rights arising therefrom is, by the very terms of the statute (section 3959 of the Code of 1919 on the effect of failure to give statutory signals), left to the jury.

13. CROSSINGS—*Instructions—Instruction as to Statutory Signals and Proximate Cause.*—While in an action for injuries sustained in an accident at a crossing, it might have been well to set out in one instruction the requirements of the crossing statute (section 3959 of the Code of 1919) and in another that there could be no recovery until it was made to appear that there was some casual connection between the omission of the railroad to comply therewith and the injury suffered, there was no error in their combination in one instruction, in the instant case, as the jury could neither have been misled or confused.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Cole & Cole,* for the plaintiff in error.

*Jas. G. Martin & Bro.* and *Williams, Loyall & Tunstall,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

The accident out of which this action grew occurred at a grade crossing near the city of Norfolk where the Indian River turnpike intersects the line of the Virginian Railway Company. Over this line a passenger train was being operated by the Norfolk Southern Railroad Company and into the locomotive tender of that train plaintiff ran his automobile. In due course matters in issue were submitted to a jury. There was a verdict for the defendants which plaintiff asked to be set aside as contrary to the law and the evidence. His motion was overruled and final judgment entered, to which exception was duly taken. This exception and those taken when the jury was being instructed are all of the exceptions before us.

In the petition for writ of error there are four assignments of error.

### Errors Assigned.

"First: The court erred in refusing to give instruction 'A,' 'B,' 'C' and 'D' as asked; thereby taking entirely away from the jury the consideration of the plaintiff's theory of the case.

"Second: The court erred in modifying instruction 'A' as asked by the plaintiff, and in giving said instruction modified as instruction No. 2.

"Third: The court erred in emphasizing and impressing upon the jury the theory of the defendants' case, by repeating and multiplying instructions thereon.

"Fourth: The court erred in giving instructions for the defendants which were misleading, confusing and erroneous."

An examination of these assignments and instructions shows that plaintiff rests his case upon two propositions. He says that he is entitled to recover: (1st)

Because the signals of approach provided for by section 3959 of the Code were not given by the Norfolk Southern Railroad Company, and (2nd) because the automatic signal and bell installed at this crossing by the Virginian Railway Company were not functioning and that this was due to the negligence of that defendant.

[1] We will, for convenience, take up first this second proposition, as it is patent that he cannot recover because the automatic signals were out of order if he himself was guilty of contributory negligence. In such a case no verdict would have been possible save one for the defendant, and if returned would have been set aside as contrary to the evidence or without evidence to support it, and so it follows that any instructions dealing with rights and liabilities arising out of defects in the automatic signals could have only an academic interest and need not be discussed nor is it necessary to copy them into this opinion.

For the purposes of this case we will assume that these signals were out of order and had been for some time, and that when in order the approach of a train was signalled in ample time by the continuous ringing of a gong and by the waving of a small flag above the track.

[2, 3, 4] This accident occurred in the open country in open day. Plaintiff, who lived near the crossing, approached it from the east. There was a barrel factory along the railway tracks one hundred and seventy-five yards distant and on the same side of the public highway a billboard of the Seaboard Bank whose nearest point was seventy-two long steps from the railway track. The country was level and the view otherwise unobstructed. It was from the direction of the barrel factory that the train came. Plaintiff states

that he was traveling at a moderate rate of speed, from fifteen to twenty miles an hour. He was fifty-two yards beyond the billboard and twenty yards from the track when he first saw the train, at which time he did all possible to save himself. He neither looked nor listened. His statement of what he did is:

"Q. And as you approached the crossing you concentrated your attention on the automatic signal?

"A. Yes.

"Q. You didn't look at anything except at the singal?

"A. It is put there to govern people.

"Q. That is your idea?

"A. Yes.

"Q. You concentrated your attention on it?

"A. Yes.

"Q. You didn't pretend to look for the train because you trusted to the signal?

"A. Yes."

As a result of this he ran into the side of the locomotive tender, after the locomotive itself had passed, and suffered the injury complained of.

The law applicable to such a state of facts is fairly well settled.

In *Kimball & Fink* v. *Friend*, 95 Va. 125, 27 S. E. 901, 904, the court, at page 140, said:

"The erection of gates, gongs, or other devices at highway or street crossings to warn travelers of approaching trains does not excuse a traveler at such crossings from exercising ordinary care and caution. And while courts and text-writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveler to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him, as if there was no such invitation."

At page 142 (27 S. E. 904), in that case is this statement of the law: "Where gates are maintained," says Elliott on Railroads, vol. 3, sec. 1157, "whether required by statute or not, the fact that the gate is open is held to be an invitation to cross, and an assurance that the track can be crossed in safety, but such invitation will not excuse the traveler himself from exercising ordinary care to avoid collision. It is the duty of the company to close the gates on the approach of a train, but the traveler himself must not rely entirely upon its servant to do so. In cases where the failure to close the gates is followed by a collision, the question of negligence and contributory negligence is usually for the jury."

It may readily be conceded that this court has gone far in holding that questions of this nature should be submitted to a jury whenever it is possible to do so. The following authorities support this general proposition: *Perkins* v. *A. C. L. R. R. Co.*, 133 Va. 242, 112 S. E. 839; *Chapman's Adm'r* v. *Hines*, 134 Va. 274, 115 S. E. 373; and *N. & W. Ry. Co.* v. *Wilkes' Adm'r*, 137 Va. 302, 119 S. E. 122, but these facts are to be remembered in connection with the law there written.

In the *Perkins Case* there was evidence to show that the plaintiff took unusual precautions to ascertain that the track was safe and sent her son upon it who reported that the way was clear.

In the *Chapman Case* the view was obstructed until within twenty-four and one-half feet of the track and the court observed that there was no evidence to show that the plaintiff did not look and listen, while in the *N. & W. Ry. Co. Case* the court said that it did not feel called upon to consider contributory negligence since it was clear that there was no primary negligence and that judgment should be for the defendant.

In *Kimball & Fink* v. *Friend, supra,* it was also said: "In *Carrington* v. *Ficklin,* 32 Gratt. (73 Va.) 670, 676-7, the court, Judge Burks delivering the opinion, said: 'When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inference to be drawn from the evidence must be either certain and incontrovertible, or they cannot be decided by the court. Negligence cannot be conclusively established by a state of facts upon which fair-minded men will differ.' "

This statement of the law was approved by Judge Staples, speaking for the court, in *Richmond & D. R. Co.* v. *Medley,* 75 Va. 499, 40 Am. Rep. 734.

[5, 6] Of course its converse is equally true.

"Questions of care and negligence after the facts are proved must be decided by the court. * * * * * * * A judge is not bound to submit to the jury the question of negligence, although there may be a conflict of evidence in relation to some of the facts relied on as proving it, if rejecting the conflicting evidence the negligence charged is conclusively proved by the defendant's own witnesses. *Moore* v. *Westevelt,* 1 Bosw. (N. Y.) 357." *Dun* v. *Seaboard R. R. Co.,* 78 Va. 645, 49 Am. Rep. 388.

In *Headley, et al.* v. *Denver & R. G. R. Co.,* 60 Colo. 500, 154 Pac. 731, the court said:

"As the standard of duty in such cases is dependent upon the particular facts and circumstances of each, the question whether contributory negligence has been proven in a given case is usually one for the jury. Nevertheless such question, in a particular case, may become one of law and thus come within the province of the court, so that a particular verdict may and should

be directed. Where the facts are such that reasonable men of fair intelligence may draw different conclusions, the question of contributory negligence must be submitted to the jury, for the finding is then of fact. But if it is clear that only one reasonable inference can be drawn from the facts, and the course which prudence dictates be definitely discerned, the finding thereon is of law, not of fact, and it devolves upon the court to settle the matter.''

If this be not true then never in an accident at a grade crossing whose gong was silent could a demurrer to evidence be interposed—a distance to which no court has gone. It is only necessary that the facts be not in dispute and that the conclusions be inevitable. A further effect of such a rule would be to discourage the use of a safety device, valuable alike to the public and to the railroads.

In no possible circumstances could reasonable men differ as to the negligence of this plaintiff. Here was a man apparently in the full possession of his faculties, in broad daylight, in a level country, traveling at a moderate rate of speed where the view was unobstructed, who ran into the side of an oncoming train and who did not see it until it was too late to save himself. He was as deaf to danger as the friends of Dives.

[7] It only remains for us to ascertain if the Norfolk Southern Railroad Company gave the statutory signals of approach, and if the jury was properly instructed as to the law applicable thereto. The first proposition is settled by the jury's verdict if it was in fact properly instructed.

[8, 9] Instruction A, as offered, is:

"A. The court instructs the jury that the statute law of this State required the defendant, Norfolk

Southern Railroad, to sound sharply the steam whistle of its engine twice at a distance of not less than 300 yards, and not more than 600 yards, from said crossing, and to ring the bell of said engine or blow the said whistle continuously or alternately until its engine had reached said crossing, and if you believe from the evidence that the defendant, Norfolk Southern Railroad, failed to perform any of its above-mentioned statutory duties, in any particular, and that the plaintiff's car was injured and destroyed by the engine or train of the defendant, then you shall find for the plaintiff, and if you believe from the evidence that the driver of plaintiff's car was negligent in any respect in approaching or attempting to cross said crossing, you should, nevertheless, find for the plaintiff, but you may consider the driver's negligence, if any, in mitigation of damages."

In this form it was refused by the trial court, which modified it by the addition of these words, "provided they further believe from the evidence that the failure to blow the whistle or ring the bell was the proximate cause of the accident," and was, as thus modified, given as instruction No. 2.

As first tendered it told the jury to return a verdict for the plaintiff if they believed that the Norfolk Southern Railroad Company had "in any particular" failed to give those signals of approach called for by section 3959 of the Code. This instruction as offered was approved by this court in *C. & O. Ry. Co.* v. *Gayle*, 132 Va. 433-439, 112 S. E. 785, but it is immemorially true that no judgment can be based upon a defendant's negligence unless that negligence in some degree contributed to the injury. There must be some casual connection between them. Certainly one, who with suicidal intent threw himself in front of an approaching train at a crossing, could not be heard to

say that the whistle was not sounded, and so it does not follow that the violation of the statute, "in any particular," necessarily gives to a plaintiff the right to recover. Its purpose was not to impose an unconditional penalty on railroads, but to protect the public. The trial court properly modified this instruction by the addition noted.

[10] It may readily be conceded that "proximate cause" is an unsatisfactory phrase. Shearman and Redfield on Negligence, section 26. It has not only troubled the unlearned, but has vexed the erudite. But by its use in unnumbered cases it has grown to be a part of the livery of the law of negligence and it is now too late to discard it.

As a matter of primary definition it probably would not occur to the wayfaring man that an accident could be the result of more than one proximate cause, and it is reasonably clear that he would believe that such an expression was intended to designate that cause which in a major degree brought about the result under consideration. This, however, is not necessarily true. A cause without which something would not have happened is a proximate cause, but it is not necessary that such cause be the major cause. It is also true that there may be more than one proximate cause. Heat, moisture and springtime may stir a dormant bud; each would be a proximate cause, and this would not be changed even though it should appear that they contributed to that result in an unequal degree.

Such a use of this term has been again and again approved by this court. See *Wash. & O. D. Ry. Co. v. Zell*, 118 Va. 755, 88 S. E. 309; *Shiveley's Adm'r v. N. & W. R. Co.*, 125 Va. 384, 99 S. E. 650; *Norfolk & Western Ry. Co. v. Simmons*, 127 Va. 419, 103 S. E. 609; *C. & O. Ry. Co. v. Bullington's Adm'r*, 135 Va.

307, 116 S. E. 237; *Morgan's Adm'r* v. *A. C. L. R. R. Co.*, 136 Va. 394, 118 S. E. 233; also Shearman and Redfield on Negligence, section 57.

[11] In *Gregory* v. *Seaboard Air Line Railway Company*, 128 S. E. 272, Judge Christian, in an opinion handed down at the May term of this court, last, had an occasion to point out that section 3959 of the Code did not change the law of negligence, and held that it was still true "that the burden of proof is upon the plaintiff to prove that the operators of the train failed to give the statutory signals and that such failure caused the injury." Section 3959 of the Code, which in so far as this case is concerned is the act of 1893-4, page 827, was in effect when the cases cited above were decided. It in substance provided that certain signals should be given at grade crossings, but before a plaintiff could recover he had to prove that his injury was due to the fact that such signals were not given—that the failure to give said signals was the proximate cause of his damage. As the law then stood he would also fail if it appeared that he himself was guilty of any negligence. Due to the increase in traffic along our public highways and particularly to the widespread use of automobiles, the salutary provisions of said section 3959 were incorporated into our statute law and introduced into such cases for the first time the doctrine of comparative negligence. This statute we have no desire to whittle away. We are unable, however, to change it beyond its manifest purpose as appears both from its letter and from a note of the Code revisers attached thereto. It did nothing more than to provide that the doctrine of comparative negligence should be substituted for that of contributory negligence. It is still necessary for the plaintiff to prove that the defendant's negligence caused his injury, that but for it the injury would not have occurred, but having

shown this he is not precluded from recovery by the fact that he himself was negligent.

[12] Two cases recently decided by this court tend to illustrate the law applicable to the facts here. In *Norfolk Southern Railroad Co.* v. *Banks,* 141 Va. 715, 126 S. E. 662, there was evidence to show that the signals were not sounded, but it also appeared in that case that the plaintiff saw the train approaching in ample time to have avoided a collision. Recovery was not allowed. In the *Gregory Case* it was fairly clear that the plaintiff was guilty of the major negligence, but the jury held that the defendant was also guilty of some negligence. The rules of comparative negligence were applied. A verdict for the plaintiff was returned, which was sustained by this court. To sum up, a cause without which an accident would not have happened is a proximate cause. When that has been established and when it has appeared that the defendant was responsible therefor, the plaintiff is entitled to judgment and this cannot be defeated by showing that he, also, was negligent, however gross that negligence may have been. In such a case the adjustment of rights arising therefrom is by the very terms of the statute left to the jury.

[13] It might have been well to set out in one instruction the requirements of the crossing statute and in another that there could be no recovery until it was made to appear that there was some casual connection between the omission of the railroad to comply therewith and the injury suffered, but there was no error here in their combination by the trial court, the jury could neither have been misled or confused.

We reach the conclusion that the jury was properly instructed on this point. There was ample evidence to support its verdict and so the verdict and judgment must stand.

*Affirmed.*